IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v.    § | CRIMINAL ACTION NO. H-18-46-1 |
| § | |
| § | CIVIL ACTION NO. H-23-3784 |
| § | |
| CUNNIE RAY DICKERSON § | |

**MEMORANDUM OPINION AND ORDER DENYING 28 U.S.C. § 2255 MOTION**

Federal prisoner Cunnie Ray Dickerson, (BOP #34193-479), through counsel, filed a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, with a memorandum in support of the motion. (Docket Entry Nos. 529, 530). The government filed a memorandum in opposition, and Dickerson replied. (Docket Entry Nos. 535, 538). Based on the motion, the response and reply, the record, and the applicable law, the court denies Dickerson's motion. The reasons are explained below.

**I.      Background**

Dickerson was charged in a superseding indictment with one count of conspiracy to possess with intent to distribute cocaine and four counts of possession with intent to distribute a controlled substance, based on events that occurred between January 2014 and July 2017. (Docket Entry No. 108). On September 20, 2018, Dickerson pleaded guilty to the conspiracy count as part of a plea agreement, in which the government agreed to dismiss the four possession charges. (Docket Entry Nos. 168, 180).

In his plea agreement, Dickerson agreed that the government could prove that between 2014 and 2017, he conspired with his co-defendants to possess with intent to distribute at least 5 kilograms of cocaine. (Docket Entry No. 167, p. 9). The evidence would show that on July 12,

2017, co-defendants Antonio Ward, Terrance Jackson, and Jay Parks came to Dickerson's house to purchase cocaine. (*Id.* at 9). While they were there, two other co-defendants—Ernesto Martinez and Eric Arauza—arrived in a separate vehicle. (*Id.*). Dickerson came outside, and Arauza handed him a package. (*Id.*). Dickerson took the package inside while Arauza remained outside. (*Id.*). A short time later, Dickerson came back outside and handed Arauza a duffle bag. (*Id.*). Shortly thereafter, Ward, Jackson, and Parks left Dickerson's house with a backpack. (*Id.* at 10). Law enforcement stopped their car and recovered approximately 8 kilograms of cocaine. (*Id.*). Law enforcement also stopped Martinez and Arauza and recovered $199,021.00 from the duffel bag, later determined to be proceeds from the sale of the cocaine. (*Id.*). Further investigation showed that during the conspiracy, Martinez regularly obtained cocaine from unindicted co-conspirators in Mexico and delivered it to Arauza, who in turn delivered it to Dickerson. (*Id.*). Dickerson then sold kilogram-quantities of cocaine to Jackson and Parks, as well as to a number of other co-conspirators, who transported the cocaine to multiple states for further distribution. (*Id.*).

After Dickerson pleaded guilty, the court ordered the United States Probation Office to prepare a Presentence Investigation Report (PSR) to assist the court with sentencing. (Docket Entry No. 166). Dickerson's PSR contains additional information about the facts underlying the conspiracy, including that co-defendant Aubrey Canady had traveled from Jacksonville, Florida, to Houston on at least three occasions to purchase cocaine from Dickerson. (Docket Entry No. 271, p. 6). Canady told investigators that he often worked with Christopher Robinson, who also traveled to Texas to purchase cocaine from Dickerson to sell in Jacksonville. (*Id.*). Additional information established that starting in mid-2016, Robinson made monthly kilogram-quantity purchases of cocaine from Dickerson. (*Id.* at 7). Robinson told investigators that on at least two occasions, Dickerson had a driver or courier deliver cocaine to Robinson in Mississippi. (*Id.* at 9-

2

10). Two other co-defendants, Dommonick Andrews and Devon Todd, purchased at least one kilogram of cocaine from Dickerson in June 2017. (*Id.* at 7). Further investigation revealed that Dickerson had been distributing large quantities of cocaine, usually multiple kilograms, from his house since 2014. (*Id.* at 9-10). This included multiple sales to two other men—Curtis Dansby and Gary Winn—who told investigators that they had purchased more than 100 kilograms of cocaine from Dickerson over a two-year period. (*Id.* at 10).

In his own statements to law enforcement, Dickerson admitted that he had purchased large quantities of marijuana and cocaine from Arauza for a number of years. (*Id.*) Dickerson also admitted that since at least 2014, he had sold 50 to 60 kilograms of cocaine to individuals who traveled to his house from Ohio, Florida, and Arkansas. (*Id.* at 10-11).

Based on these facts, the PSR held Dickerson accountable for 101 kilograms of cocaine, which placed his base offense level at 34. (*Id.* at 13). The PSR recommended that Dickerson be considered a leader or organizer of the criminal activity, and it included a 4-level enhancement under United States Sentencing Guidelines § 3B1.1(a) based on that role. (*Id.* at 12-13). The PSR also included a 2-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a "stash house." (*Id.* at 13). Dickerson received a 3-level decrease for acceptance of responsibility, which resulted in a total offense level of 37. (*Id.* at 13-14). Based on this offense level and Dickerson's criminal history score, his advisory Guidelines sentencing range was 262 to 327 months in prison. (*Id.* at 21). Dickerson filed no written objections to the PSR.

On October 31, 2022, Dickerson appeared for sentencing with counsel. Counsel initially stated that she had no objections to the PSR, and the court adopted the PSR as prepared. (Docket Entry No. 518, p. 3). The court noted that the government was requesting a below-Guidelines sentence of 176 months, while Dickerson was requesting a sentence of 60 months. (*Id.* at 3-4). In

support of Dickerson's request for a 60-month sentence, counsel argued that Dickerson had been a model citizen while on pretrial release. (*Id.* at 4-5). Counsel also pointed out Dickerson's cooperation with the government. (*Id.* at 5-6). Counsel then argued that while she was not "objecting formally to the [PSR]," she did dispute the characterization of Dickerson as a leader or organizer and the resulting 4-level enhancement. (*Id.* at 6). Counsel contended that Dickerson was, at most, only an intermediary between the supplier and his customers, which might result in at most a 3-level enhancement as a manager or supervisor. (*Id.* at 6-7). Counsel also argued that Dickerson's house did not qualify as a "stash house" because it was not used primarily for storing drugs. (*Id.* at 7). In addition, counsel argued that the government could account for only 16.88 kilograms of cocaine during the year Dickerson was under surveillance. Counsel asked the court to consider sentencing Dickerson based on that amount rather than the full amount identified in the PSR. (*Id.* at 7-8). Finally, counsel argued that Dickerson's co-defendants had received sentences of 84, 90, and 135 months and that the government's proposed sentence for Dickerson was disproportionate to his involvement in the offense and his role in the conspiracy. (*Id.*). The court addressed this last argument, noting that Dickerson's sentencing range was higher than Arauza's primarily because Arauza did not receive enhancements for his role in the conspiracy or maintaining a stash house. (*Id.* at 9-10). Finally, trial counsel noted that while the statutory mandatory minimum sentence was 120 months, she believed that the totality of the facts warranted a lower sentence. (*Id.* at 10).

In response, the government argued that while Dickerson was not the only leader of the conspiracy, he was certainly one of the leaders. (*Id.* at 12). The government pointed out that Dickerson had customers all over the country, he had discretion on what he would charge them for the cocaine, and he had drivers who had delivered drugs for him on at least two occasions. (*Id.* at

4

13). The government also defended the "stash house" enhancement, noting that premises need not be kept solely to store drugs to qualify as a "stash house." (*Id.*). The government pointed out that during the length of the conspiracy, Dickerson "regularly conducted cocaine transactions at that residence." (*Id.* at 14). In addition, when agents executed a search warrant on Dickerson's house, they found drug wrappers, drug paraphernalia, drug ledgers, scales, and money counters—all indicators of a large-scale cocaine-trafficking conspiracy. (*Id.*). The government noted that Dickerson had admitted in his plea agreement that he was accountable for more than 100 kilograms of cocaine. (*Id.*). Based on this, the government requested a sentence of 176 months in prison. (*Id.* at 12).

After hearing and considering these arguments, the court found that the 4-level enhancement for being a leader or organizer and the 2-level enhancement for maintaining a stash house were "appropriately imposed." (*Id.* at 15). The court recognized that Dickerson had cooperated with the government and had been a productive citizen while on pretrial release. (*Id.*). After considering the sentencing requests made by both parties and the facts established in the plea agreement and the PSR, the court sentenced Dickerson to 132 months in prison, followed by five years of supervised release. (*Id.* at 15-16). Judgment was entered on November 4, 2022. (Docket Entry No. 508).

On October 6, 2023, Dickerson filed his § 2255 motion, raising one claim of ineffective assistance of trial counsel based on counsel's failure to file a written objection to the 4-level enhancement for his role as a leader or organizer. (Docket Entry No. 529). The government responded, contending that Dickerson's claim was not cognizable because it was an attack on the Guidelines calculation rather than an ineffective-assistance-of-counsel claim. (Docket Entry No. 535, pp. 15-18). Alternatively, the government contended that the claim, if considered as one of

ineffective assistance of counsel, was without merit. (*Id.* at 18-35). Dickerson filed a timely reply. (Docket Entry No. 538).

## II. The Applicable Legal Standards

### A. Motions under 28 U.S.C. § 2255

Postconviction relief under 28 U.S.C. § 2255 is limited to errors of constitutional dimension that could not have been raised on direct appeal and that, if left unaddressed, would result in a complete miscarriage of justice. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *see also United States v. Rodriguez-Castro,* 814 F. App'x 835, 837-38 (5th Cir. 2020) (per curiam). Because of these limitations, a federal defendant may move to vacate, set aside, or correct his sentence under § 2255 only if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeds the statutory maximum; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

### B. Evidentiary Hearing

A defendant seeking relief under § 2255 is entitled to an evidentiary hearing on his claims "unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Allen*, 918 F.3d 457, 460 (5th Cir. 2019) (quoting *United States v. Harrison*, 910 F.3d 824, 826-27 (5th Cir. 2018)). If the defendant fails to meet his burden of proof at the pleadings stage, an evidentiary hearing is not necessary. *See Cervantes*, 132 F.3d at 1110; *see also United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the

petitioner has failed to allege facts which, if proved, would admit of relief." (quoting *Clark v. Collins,* 19 F.3d 959, 964 (5th Cir. 1994))).

**III. Analysis**

In his single claim, Dickerson alleges that trial counsel provided ineffective assistance by failing to file a written objection to the 4-level enhancement he received under U.S.S.G. § 3B1.1 for his role as a leader or organizer of the criminal activity.[1] To prevail on an ineffective assistance of counsel claim, the defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of the *Strickland* test requires the defendant to show that counsel's representation was objectively unreasonable. *Id.* at 687-88. Reasonableness is measured against prevailing professional norms and is viewed under the totality of the circumstances. *Id.* at 688. The second prong of the *Strickland* test requires the defendant to show that "it is reasonably likely the result would have been different," if not for counsel's deficient performance. *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (cleaned up). The defendant has the burden of proof on both *Strickland* prongs. *See United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

---

[1] The government contends that Dickerson's claim is actually a challenge to the application of the Guidelines, which is not cognizable in a § 2255 motion. *See, e.g., United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999) (misapplication of the Sentencing Guidelines is not a cognizable claim under § 2255); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (a claim that the court erred in calculating a defendant's sentence is not grounds for § 2255 relief because "[t]echnical application of the Sentencing Guidelines does not give rise to constitutional issues"); *United States v. Segler*, 37 F.3d 1131, 1133-34 (5th Cir. 1994) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255"). Rather than specifically challenging the Guidelines calculation, Dickerson clearly frames his claim as one of ineffective assistance of counsel. The court will address his claim within the framework of an ineffective assistance of counsel claim.

7

Under both prongs, judicial scrutiny is highly deferential, and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. The court presumes that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Because a defendant must satisfy both prongs of *Strickland*, even if counsel's performance was professionally unreasonable, the sentence will not be set aside unless it was adversely affected by the deficiency. *See Strickland*, 466 U.S. at 691. To establish prejudice, a defendant must show that the result of the challenged proceeding would have been different without counsel's allegedly deficient performance "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. When the defendant raises ineffective assistance of counsel in connection with the imposition of his sentence, he must show that, but for counsel's errors, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)).

### A. Deficient Performance

To satisfy *Strickland*'s first prong, Dickerson contends that trial counsel's performance was deficient because she failed to file written objections to the § 3B1.1(a) enhancement in the PSR or to formally object to the PSR at the sentencing hearing. Dickerson contends that had counsel filed such objections, the court would have either completely stricken the enhancement or reduced it to a 3-level enhancement under § 3B1.1(b). The record of the sentencing hearing does not support Dickerson's argument that counsel performed deficiently.

8

To be subject to the 4-level enhancement for his role in the offense, the defendant must be either a leader or organizer of one or more other participants or have "management responsibility over the property, assets, or activities of a criminal organization." U.S. SENT'G COMM'N, GUIDELINES MANUAL § 3B1.1 cmt. 2 (Nov. 2023). If a defendant is not a leader or organizer, he may still be subject to a 3-level enhancement as a manager or supervisor. *See* U.S.S.G. § 3B1.1(b). In distinguishing between a leadership role and a management role, the court considers (1) the exercise of decision-making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) any claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others. *Id.* at cmt. 4. These factors are neither dispositive nor exhaustive, and the court is entitled to look to all of the facts to determine the defendant's role. *See United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995) ("A defendant's role in the criminal activity for the purpose of applying guideline section 3B1.1 may be deduced inferentially from available facts.").

The facts included in Dickerson's plea agreement and documented in the PSR show that he organized and managed the distribution of more than 100 kilograms of cocaine to distributors in at least 3 states over at least a 2-year period. Dickerson received kilogram-quantity cocaine deliveries from Martinez and Arauza, managed the distribution of that cocaine to lower-level distributors from around the country, and handled payments for both sides of the transactions. He had decision-making authority over the prices he charged distributors for the cocaine. On at least two occasions, he arranged for someone to deliver cocaine on his behalf to Mississippi. In addition, Dickerson owned and managed the property where the cocaine transactions occurred, and he maintained books and ledgers of those transactions. While Dickerson may not have been

the only leader of the activity, these facts show that he had a leadership role in the conspiracy. The facts support the trial court's finding at the sentencing hearing that a 4-level enhancement based on Dickerson's role was appropriate.

In his § 2255 motion, Dickerson challenges the credibility of the facts contained in the PSR. But the facts in the PSR are supported by his co-defendant's statements, Dickerson's own statements, and the evidence found during the execution of the search warrant. A court may adopt the facts included in a PSR "without further inquiry if those facts have an adequate basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Melendez*, 57 F.4th 505, 509 (5th Cir. 2023); *see also Ayala*, 47 F.3d at 690 ("The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it."). Dickerson does not identify new or different facts that counsel could have presented to the court through a formal or written objection to the PSR to rebut the facts contained in the PSR or its characterization of his role in the offense. And while Dickerson takes issue with trial counsel's decision to raise the issue in argument at the sentencing hearing rather than in a written objection, trial counsel is not deficient for pursuing a sentencing strategy different from that which current counsel would have pursued, as long as it is reasonable.

In the absence of evidence showing that the trial court's determination that Dickerson was a leader or organizer was unreliable, Dickerson cannot show that trial counsel's performance was deficient. He has failed to satisfy the first *Strickland* prong, which precludes relief on his § 2255 motion.

**B. Prejudice**

In addition to failing to show deficient performance, Dickerson has failed to satisfy the second *Strickland* prong by showing that he was prejudiced by trial counsel's alleged deficiencies. To prove prejudice in the context of his sentence, Dickerson must point to facts demonstrating a reasonable probability that he would have received a sentence below 132 months had trial counsel filed written objections or made a "formal objection" to the 4-level role enhancement included in the PSR.

Dickerson contends that if counsel had filed written objections or formally objected to the PSR, the court would have removed the enhancement and his advisory Guidelines sentencing range would have been lowered, resulting in a lower sentence. But Dickerson points to no evidence that the 4-level enhancement would have been removed had counsel filed a written or formal objection, rather than making her arguments during the sentencing hearing. In addition, Dickerson received a sentence significantly below the advisory Guidelines sentencing range, and he points to no evidence that the court would have imposed an even lower non-Guideline sentence if the enhancement had been reduced or removed.

More importantly, the transcript of the sentencing hearing does not support Dickerson's argument that he was prejudiced by any allegedly deficient trial counsel performance. At the sentencing hearing, trial counsel raised the issue of the role enhancement, contending that Dickerson did not qualify as a leader of the organization. Contrary to Dickerson's current argument, trial counsel did not forget about the role enhancement issue. Instead, the transcript shows that trial counsel made a prepared and well-reasoned argument that Dickerson acted only as a go-between between the actual suppliers—Arauza and Martinez—and the actual distributors, including Ward, Jackson, Parks, Canady, and Robinson. Counsel argued that the 4-level

11

enhancement overstated Dickerson's role, that he did not import or supply the cocaine, that he did not have people selling for him, and that he was simply a "mule" who transferred the cocaine from the supplier to the distributors.

The transcript shows that the court did not refuse to consider trial counsel's arguments because of the lack of a written objection. Instead, the court considered trial counsel's argument and determined that the 4-level enhancement was "appropriately imposed." (Docket Entry No. 518, p. 15). The court then explained:

> So what do I do with all of that conflicting evidence? It is not an easy choice. The government wants 176 months. Your lawyer has asked me to consider 60 months. 60 months is not sufficient to account for your role in distributing 101 kilos of cocaine over an extended period. 176 months seems to me to be more than is needed given – or appropriate given the extent of the defendant's compliance over the last years and cooperation with the government including, as you say, securing the conviction of three other individuals.
>
> So trying to balance all of those things, I believe the appropriate sentence is 132 months. That is ten years plus 12 months. It seems to me that that does give – that does recognize Mr. Dickerson's cooperation, the benefits it provided. It recognizes the severity, nature, extent, and duration of his criminal activity; and it is – does not involve or present unwarranted disparities with other defendants who are in critical ways similar; and it is this Court's judgment. The Court believes it is consistent with the guideline objectives and with the 3553(a) factors.

(*Id.* at 15-16).

Although the court did not accept Dickerson's requested sentence, it is apparent that the court did not base its sentencing decision on a specified reduction from advisory Guidelines sentencing range. It is also apparent that the court entertained trial counsel's arguments concerning Dickerson's role in the criminal activity and his relative culpability when compared to his co-defendants. The court did not limit its consideration of a sentence to the advisory Guidelines sentencing range but instead imposed a sentence based on the statutory minimum sentence of 120 months and its evaluation of all the facts and sentencing factors, including those required by 18

12

U.S.C. § 3553(a) and the parties' arguments. In short, the sentence was imposed based on the court's independent review of the facts included in the plea agreement, the PSR, the statutory minimum sentence, the sentences of the co-defendants and their relative culpabilities, and the court's consideration of the arguments made at the sentencing hearing. Nothing in the record shows that trial counsel's failure to file a written objection to the 4-level enhancement for Dickerson's role in the offense factored into the court's sentencing decision in any manner.

Dickerson points to no evidence showing that he would have received a lower non-Guideline sentence had trial counsel had filed written objections to the PSR rather than relying on argument at the sentencing hearing. In the absence of such evidence, Dickerson cannot establish that he was prejudiced by any alleged deficient performance by trial counsel. Having failed to establish *Strickland*'s prejudice prong, Dickerson cannot prove his ineffective assistance of counsel claim, and his motion to vacate, set aside, or correct his sentence is denied.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (cleaned up). Under that standard, the petitioner is required to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)

(cleaned up). A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam). The court concludes that reasonable jurists could not find Dickerson's claim meritorious. A certificate of appealability is denied.

**V.     Conclusion**

Dickerson's motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, (Docket Entry No. 529), is denied. Dickerson's civil action, (No. 4:23-cv-3784), is dismissed with prejudice. The record conclusively demonstrates that no relief is appropriate, and no evidentiary hearing is needed. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983) (no hearing is necessary when a motion is devoid of factual or legal merit). Because reasonable jurists could not disagree with the denial of the § 2255 motion, no certificate of appealability is issued. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

SIGNED on April 23, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge